IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.:

| | |
|---|---|
| EB5 Affiliate Network Regional Center Application, LLC, | ) |
| EB5AN Southeast Regional Center LLC, | ) |
| EB5AN D.C. and Carolinas Regional Center, LLC, | ) |
| EB5AN Rocky Mountain Regional Center, LLC, | ) |
| EB5 Affiliate Network Southeast Regional Center, LLC, | ) |
| and | ) |
| EB5AN AZ and Southern Regional Center, LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Director, U.S. Citizenship and Immigration Services | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## COMPLAINT

Plaintiffs, EB5 Affiliate Network Regional Center Application, LLC, EB5AN Southeast Regional Center LLC, EB5AN D.C. and Carolinas Regional Center, LLC, EB5AN Rocky Mountain Regional Center, LLC, EB5 Affiliate Network Southeast Regional Center, LLC, and EB5AN AZ and Southern Regional Center, LLC, ("Plaintiffs"), by and through their undersigned counsel and pursuant to applicable rules of civil procedure, hereby file this Complaint against Defendant, Director, U.S. Citizenship and Immigration Services, and in support thereof state as follows:

Introduction. Congress is fed up with Defendant's adjudication times for immigration benefit requests related to the "EB-5 Program." In March 2022, Congress required Defendant to conduct a fee study by March 15, 2023, and set a fee for Form I-956F to ensure adjudications for this form would take, on average, between 90 and 180 days. EB-5 Reform and Integrity Act of

2022 (the "Act"), P.L. 117-103 at § 106(136 Stat. 1070 (March 15, 2022). Defendant first promulgated the forms and original fee ($17,795) for Form I-956F in 2022 and later promulgated an updated Form I-956F and substantially increased fee ($47,695) on April 1, 2024. Regardless, Plaintiffs have filed ten Forms I-956F (including one amendment filing) and in one case has waited over 588 days for action. Plaintiffs have paid large fees (the substantially increased fee of $47,695 for eight forms, one fee of $47,695 for an amendment filing, and the original fee of $17,795 for one form) to sponsor new EB-5 investment projects that will directly stimulate the U.S. economy and create thousands of new jobs for American workers. Plaintiffs have also obtained re-designation of the sponsoring regional centers. But Defendant has failed to fulfill its side of the bargain. For the reasons below, this Court should compel Defendant to render a final decision on Plaintiffs' pending Forms I-956F within 14 days.

## PARTIES

1.     Plaintiff EB5 Affiliate Network Regional Center Application, LLC, is organized under the laws of Florida, with its principal place of business in Jupiter, Florida.

2.     Plaintiff EB5AN Southeast Regional Center, LLC, is organized under the laws of Florida, with its principal place of business in Jupiter, Florida. Plaintiff EB5AN Southeast Regional Center, LLC, is a wholly owned subsidiary of Plaintiff EB5 Affiliate Network Regional Center Application, LLC.

3.     Plaintiff EB5AN D.C. and Carolinas Regional Center, LLC, is organized under the laws of Florida, with its principal place of business in Jupiter, Florida. Plaintiff EB5AN D.C. and Carolinas Regional Center, LLC, is a wholly owned subsidiary of Plaintiff EB5 Affiliate Network Regional Center Application, LLC.

4. Plaintiff EB5AN Rocky Mountain Regional Center, LLC is organized under the laws of the State of Florida with its principal place of business in Jupiter, Florida. Plaintiff EB5AN Rocky Mountain Regional Center, LLC is a wholly owned subsidiary of Plaintiff EB5 Affiliate Netwrok Regional Center Application, LLC.

5. Plaintiff EB5 Affiliate Network Southeast Regional Center, LLC, is organized under the laws of Florida, with its principal place of business in Jupiter, Florida. Plaintiff EB5 Affiliate Network Southeast Regional Center, LLC, is a wholly owned subsidiary of Plaintiff EB5 Affiliate Network Regional Center Application, LLC.

6. Plaintiff EB5AN AZ and Southern Regional Center, LLC, is organized under the laws of Florida, with its principal place of business in Jupiter, Florida. Plaintiff EB5AN AZ and Southeast Regional Center, LLC, is a wholly owned subsidiary of Plaintiff EB5 Affiliate Network Regional Center Application, LLC.

7. Defendant Director of United States Citizenship and Immigration Services ("USCIS") is responsible for timely adjudicating all immigration benefits requests, including Form I-956F, Application for an Approval of an Investment in a Commercial Enterprise.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 106 (1977).

9. Under its federal question jurisdiction, this Court can hear claims under the Administrative Procedure Act (5 U.S.C. § 501, *et seq.*) ("APA").

10. Under the APA, this Court can compel agency action that is unreasonably delayed or unlawfully withheld. 5 U.S.C. §§ 555(b), 706.

11. Under its federal question jurisdiction, this Court can also provide declaratory relief under 28 U.S.C. § 2201.

12. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because the five Plaintiffs reside in this District and Division.

13. Plaintiffs have exhausted or constructively exhausted all administrative remedies. *Darby v. Cisneros*, 509 U.S. 137 (1993).

## LEGAL BACKGROUND

14. Congress created the "EB-5" immigrant visa as part of the Immigration Act of 1990. 104 Stat. 4978, P.L. 101-649 (Nov. 29, 1990).

15. Generally, an EB-5 visa is available to a foreign national who invests the requisite amount of capital[1] into a new commercial enterprise that creates 10 new jobs for lawful American workers. 8 U.S.C. § 1153(b)(5).

16. EB-5 investments were originally limited to "direct investments"—one foreign national invested the requisite amount in a new company, and that company directly created the requisite jobs.

17. In 1992, Congress passed legislation to allow EB-5 investors to pool their investments, thereby allowing EB-5 investors to fund much larger projects and facilitate greater domestic

---

[1] For most of the EB-5 program's history, the minimum EB-5 capital investment was $1 million dollars. This minimum amount was reduced to $500,000 for any immigrant investor who selected a qualifying EB-5 project with a principal place of business in a "Targeted Employment Area" or "TEA," specifically a geographic location in "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)." 8 U.S.C. § 1153(b)(5)(B)(iii); *see also* 8 C.F.R. § 204.6(j)(6). Those minimum amounts were raised in November 2019 to $1.8 million and $900,000, respectively. *See* 84 FR 35750 (Jul. 24, 2019). These amounts then changed again in March 2022 to $1,050,000 and $800,000, respectively. *See* 8 U.S.C. § 1153(b)(5)(C)(i)-(ii).

economic impact. *See* The Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, § 610, 106 Stat. 1828, P.L.102–395 (Oct. 6, 1992).[2]

18.  To take advantage of the more favorable terms of a pooled EB-5 investment,[3] foreign nationals must invest through a USCIS-approved "Regional Center."

19.  A Regional Center is a corporate entity that "is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment." 8 C.F.R. § 204.6(e).

20.  If a Regional Center's "exemplar" new commercial enterprise is pre-approved, USCIS will defer to the project-wide aspects of the new commercial enterprise if/when foreign nationals invest and submit *actual* EB-5 Form I-526 (now Form I-526E) petitions based on the approved exemplar: "If the evidence provided remains unchanged from the documentation that was the basis for the approval of the regional center proposal, then the prior approval of the capital investment structure and the job creation methodology should generally be given deference." *Id.* at 13.

21.  In practice, the exemplar policy gives Regional Centers the ability to develop new commercial enterprises, get them pre-approved, and *then* offer them to potential foreign national investors.

---

[2] Though originally designated as a "pilot program," the Regional Center model has been in place since 1992 (with occasional innocuous gaps due to recurring sunset provisions). Congress removed the word "pilot" in 2012. *See* Policy Memo, USCIS, PM-602-0083, EB-5 Adjudications Policy, (May 30, 2013).

[3] Unlike a direct EB-5 petition, a "Regional Center" EB-5 petition may rely on indirect job creation—a Regional Center's new commercial enterprise may show job creation through economic modeling based on, for example, the impacts of construction spending. *See* 8 C.F.R. § 204.6(m)(7)(ii). A new commercial enterprise associated with a Regional Center similarly need not make any direct W-2 hires. Regional Center–related petitions generally accommodate larger numbers of investors in the same new commercial enterprise because of job creation scaling. A given project might, for example, create hundreds or thousands of jobs, calculated through "reasonable methodologies" as contemplated by 8 C.F.R. § 204.6(m)(7)(ii), evidenced through an economist's job creation report using accepted econometric models such as RIMS II or REDYN.

22. "Exemplar-approved" new commercial enterprises are very attractive to potential foreign national investors, as they, in theory, present a higher chance of approval of their EB-5 petitions because USCIS has already adjudicated that the offering of the new commercial enterprise is compliant with the EB-5 Program.

*The EB-5 Reform and Integrity Act of 2022*

23. On March 15, 2022, Congress passed the Act. P.L. 117-103, 136 Stat. 1070 (Marc. 15, 2022).

24. As part of the Act, Congress condoned and legislated the "pre-approval" process described above.

25. Under the Act, existing and new Regional Centers are required to file Form I-956F, Application for Approval of an Investment in a Commercial Enterprise, before they can offer a new investment opportunity to a potential foreign national investor. The Act, § 103(b)(1)(F).

26. The only material difference between the analysis under the pre-Act Form I-924 exemplar process and the current Form I-956F exemplar process is that Form I-956F requires the Regional Center to demonstrate it has complied with the additional requirements under the Act, namely the following: (1) there are policies and procedures in place by the Regional Center "reasonably designed" to ensure compliance by the Regional Center, issuer, and any agent or party associated with the offering with (a) the securities laws of the United States and (b) state securities laws; (2) a certification that those parties in aforementioned clause (1) are in compliance; and (3) that of the 10 jobs required to be created, at least one is a direct job (note that the direct job can also be derived through an econometric model).

27. The Act also empowers USCIS to determine whether an EB-5 project is located in a TEA. Previously, the states were in charge of issuing TEA designation letters, which USCIS gave deference to unless there was a mathematical error in calculating the unemployment rate.

28. Dissatisfied with the processing times of EB-5 petitions, Congress also mandated that USCIS conduct a fee study within 1 year of the Act's passage: "No later than 1 year after the date of the enactment of this Act, U.S. Citizenship and Immigration Services shall complete a study of fees charged in the administration of the program[.]" The Act at § 106(a).

29. Congress further mandated that, within 60 days of the completion of the fee study, the average processing time for Form I-956F be 90 days for investments in TEAs and 180 days otherwise:

> [N]ot later than 60 days after the completion of the study under subsection (a), shall set fees for services provided under sections 203(b)(5) and 216A of such act at a level sufficient to ensure the full recovery only of the costs of providing such services, including the cost of attaining the goal of completing adjudications, on average, not later than . . .
>
> (2) 180 days after receiving an application for approval of an investment in a new commercial enterprise described in section 203(b)(5)(F) of such Act;
>
> (3) 90 days after receiving an application for approval of an investment in new commercial enterprise described in section 203(b)(5)(F) of such Act that is located in a targeted employment area of such Act.

The Act at §§ 106(b)(2)-(3).

30. Congress mandated that these steps be in place on or by May 15, 2023.

*Implementation of the Act*

31. When the Act was passed, USCIS initially took the position that all pre-Act Regional Centers ("Legacy Regional Centers") were automatically de-certified. *Behring Reg'l Ctr. LLC v. Mayorkas*, No. 22-CV-02487-VC, 2022 WL 2290594, at *2 (N.D. Cal. June 24, 2022).

32. After that action was enjoined, USCIS agreed to accept Forms I-956F from Legacy Regional Centers. *EB5 Capital, et al., v. United States Dep't Homeland Security*, No.: 3:22-cv-3948-VC, ECF No. 47-2, at ¶ C(2) (N.D. Cal. Aug. 24, 2022).

33. USCIS maintains a dedicated Immigrant Investor Program Office ("IPO") to handle all EB-5 Program–related filings, including Forms I-956F. The IPO is in the District of Columbia.

34. The IPO does not receive funds appropriated by Congress. Rather, it is required to charge fees to cover the cost of adjudicating EB-5 Program–related petitions, including Forms I-956F, in a reasonable amount of time.

*EB5 Affiliate Network*

35. Plaintiff EB5 Affiliate Network Regional Center Application, LLC ("EB5AN"), opened in 2013. It owns and operates 15 USCIS-designated regional centers covering the entire continental United States.

36. In its 13-year tenure, EB5AN's Regional Centers have sponsored over $1.5 billion dollars in foreign investment from over 70 different countries. With these funds, investors sponsored by EB5AN's Regional Centers have created over 28,400 new jobs for American workers.

37. Most impressively, EB5AN has a 100% USCIS project approval rate for EB-5 projects where it raises the capital, serves as the fund manager, and provides sponsorship under one of its Regional Centers.

38. EB5AN is one of the most respected and successful EB-5 companies in the history of the program.

39. EB5AN principal Samuel B. Silverman was recently quoted in the Wall Street Journal with regard to the EB-5 Program and also prepared an expert report and participated as a testifying EB-5 Program expert witness before the Court of Chancery of Delaware in a complicated matter

involving EB-5 Program Regional Center operational best practices and market expenses. *Bamford v. Penfold, L.P.*

40. EB5AN wholly owns Plaintiff EB5AN Southeast Regional Center, LLC (the "Southeast Florida RC"); Plaintiff EB5AN D.C. and Carolinas Regional Center, LLC (the "D.C and Carolinas RC"); Plaintiff EB5AN Rocky Mountain Regional Center, LLC (the "Rocky Mountain RC"); Plaintiff EB5 Affiliate Network Southeast Regional Center, LLC (the "Southeast Georgia RC"); and Plaintiff EB5AN AZ and Southern Regional Center, LLC (the "AZ and Southern RC"). EB5AN, through the Southeast Florida RC, the D.C and Carolinas RC, the Rocky Mountain RC, the Southeast Georgia RC, and the AZ and Southern RC are currently sponsoring nine new commercial enterprises: EB5AN Corey Landing Fund 30, LP (the "Corey Landing NCE"); EB5AN Rocky River Fund 34, LP (the "Rocky River Loan 2 NCE"); EB5AN Rocky River Fund 38, LP (the "Rocky River Loan 3 NCE"); EB5AN Tamarack Resort Fund XXV, LP (the "Tamarack NCE"); EB5AN Twin Lakes Georgia Fund 37, LP (the "Twin Lakes Loan 5 NCE"); EB5AN Spring Haven Fund 35, LP (the "Spring Haven NCE"); EB5AN Bay Creek Fund 39, LP (the "Bay Creek NCE"); EB5AN Grand Park Fund 36, LP (the "Grand Park NCE"); and Pilot Point EB-5 Fund, LLC (the "Pilot Point NCE").

41. The Corey Landing NCE seeks to raise $25.6 million dollars from 32 foreign national investors to fund development costs of *Corey Landing*, a 144-unit condominium development in Pinellas County, Florida (the "Corey Landing Project").

42. The Corey Landing Project is expected to create approximately 2,355.9 *new* jobs for American workers.

43. The Corey Landing NCE is sponsored by the Southeast Florida RC.

44. Development activities of the Corey Landing Project are already underway. The Corey Landing Project looks to be a strong EB-5 investment for foreign national investors.

45. To this end, the Corey Landing NCE Form I-956F was delivered to USCIS on November 26, 2024, and USCIS issued the Corey Landing NCE a receipt on December 3, 2024, with receipt number INF2460011827.

46. Over the past 227+ days, USCIS has taken no action on the Corey Landing NCE's Form I-956F.

47. The Rocky River Loan 2 NCE seeks to raise $80.0 million dollars from 100 foreign national investors to fund development costs of *Cresswind Rocky River*—a master-planned active adult community consisting of approximately 1,120 single-family homes and associated amenities, in Stanly County, North Carolina (the "Rocky River Project").

48. The Rocky River Project is expected to create approximately 7,020.7 *new* jobs for American workers.

49. The Rocky River Loan 2 NCE is sponsored by the D.C. and Carolinas RC.

50. Development activities for the Rocky River Project are already underway. The Rocky River Project looks to be a strong EB-5 investment for foreign national investors.

51. To this end, the Rocky River Loan 2 NCE Form I-956F was delivered to USCIS on April 9, 2025, and USCIS issued the Rocky River NCE a receipt on April 14, 2025, with receipt number INF2560015338.

52. Over the past 95+ days, USCIS has taken no action on the Rocky River Loan 2 NCE's Form I-956F.

53. The Rocky River Loan 3 NCE seeks to raise $80.0 million dollars from 100 foreign national investors to fund development costs of the Rocky River Project as described above.

54. To this end, the Rocky River Loan 3 NCE Form I-956F was delivered to USCIS on May 19, 2025, and USCIS issued the Rocky River Loan 3 NCE a receipt on May 23, 2025, with receipt number INF2560015962.

55. Over the past 56+ days, USCIS has taken no action on the Rocky River Loan 3 NCE's Form I-956F.

56. The Tamarack NCE seeks to raise $160.0 million dollars from 200 foreign national investors to fund development costs of *Tamarack Resort*, an ongoing master-planned, all-season resort, including a golf course, ski facilities, single-family homes and home sites, condominiums, townhomes, a hotel, marina, and other amenities in Valley County, Idaho (the "Tamarack Project").

57. The Tamarack Project is expected to create approximately 7,862.3 *new* jobs for American workers.

58. The Tamarack NCE is sponsored by the Rocky Mountain RC.

59. Development activities of the Tamarack Project are already underway. The Tamarack Project looks to be a strong EB-5 investment for foreign national investors.

60. To this end, the Tamarack NCE's initial Form I-956F was approved by USCIS on October 21, 2024, and the Tamarack NCE was issued NCE ID NCE2490000925 and Receipt Number INF2460011055 for its initial Form I-956F. The Tamarack NCE's amendment filing of Form I-956F ("Form I-956F Amendment Filing") was delivered to USCIS on April 22, 2025, and USCIS issued the Tamarack NCE a receipt for its Form I-956F Amendment Filing on April 28, 2025, with receipt number INF2560015580.

61. Over the past 81+ days, USCIS has taken no action on the Tamarack NCE's Form I-956F Amendment Filing.

62. The Twin Lakes Loan 5 NCE seeks to raise $80.0 million dollars from 100 foreign national investors to fund development costs of *Twin Lakes Georgia*, a new single-family home community comprised of approximately 1,300 single-family residential homes with various amenities in Jackson, Georgia (the "Twin Lakes Project").

63. The Twin Lakes Project is expected to create approximately 6,934.3 *new* jobs for American workers.

64. The Twin Lakes Loan 5 NCE is sponsored by the Southeast Georgia RC.

65. Development activities of the Twin Lakes Project are already underway. The Twin Lakes Project looks to be a strong EB-5 investment for foreign national investors.

66. To this end, the Twin Lakes Loan 5 NCE Form I-956F was delivered to USCIS on April 29, 2025, and USCIS issued the Twin Lakes Loan 5 NCE a receipt on May 5, 2025, with receipt number INF 2560015654.

67. Over the past 74+ days, USCIS has taken no action on the Twin Lakes Loan 5 NCE's Form I-956F.

68. The Spring Haven NCE seeks to raise $80.0 million dollars from 100 foreign national investors to fund development costs of *Cresswind at Spring Haven*—a master-planned active adult community consisting of approximately 700 single-family homes and associated amenities in Coweta County, Georgia (the "Spring Haven Project").

69. The Spring Haven Project is expected to create approximately 4,598.1 *new* jobs for American workers.

70. The Spring Haven NCE is sponsored by the Southeast Georgia RC.

71. Development activities of the Spring Haven Project are already underway. The Spring Haven Project looks to be a strong EB-5 investment for foreign national investors.

72. To this end, the Spring Haven NCE Form I-956F was delivered to USCIS on April 17, 2025, and USCIS issued the Spring Haven NCE a receipt on April 22, 2025, with receipt number INF2560015453.

73. Over the past 87+ days, USCIS has taken no action on the Spring Haven NCE's Form I-956F.

74. The Bay Creek NCE seeks to raise $40.0 million dollars from 50 foreign national investors to fund development and operational costs of the *Bay Creek* master-planned community and resort in Northampton County, Virginia (the "Bay Creek Project").

75. The Bay Creek Project is expected to create approximately 1,371.7 *new* jobs for American workers.

76. The Bay Creek NCE is sponsored by the D.C. and Carolinas RC.

77. Development activities of the Bay Creek Project are already underway. The Bay Creek Project looks to be a strong EB-5 investment for foreign national investors.

78. To this end, the Bay Creek NCE Form I-956F was delivered to USCIS on July 8, 2025, with FedEx tracking number 882504942848, for which USCIS has not yet issued the Bay Creek NCE a receipt with an INF receipt number.

79. USCIS has taken no action on the Bay Creek NCE's Form I-956F.

80. The Grand Park NCE seeks to raise $80.0 million dollars from 100 foreign national investors to fund development and operational costs of *Grand Park*, an ongoing master-planned, mixed-use community Grand County, Colorado (the "Grand Park Project").

81. The Grand Park Project is expected to create approximately 9,442.4 *new* jobs for American workers.

82. The Grand Park NCE is sponsored by the Rocky Mountain RC.

83. Development activities of the Grand Park Project are already underway. The Grand Park Project looks to be a strong EB-5 investment for foreign national investors.

84. To this end, the Grand Park NCE's Form I-956F was delivered to USCIS on May 30, 2025, and USCIS issued the Grand Park NCE a receipt on June 5, 2025, with receipt number INF2560016193.

85. Over the past 43+ days, USCIS has taken no action on the Grand Park NCE Form I-956F.

86. The Pilot Point NCE seeks to raise $4.0 million dollars from five foreign national investors to fund development costs of a Pilot Point Holiday Inn Express hotel in Denton County, Texas (the "Pilot Point Project").

87. The Pilot Point Project is expected to create approximately 134.7 *new* jobs for American workers.

88. The Pilot Point NCE is sponsored by the AZ and Southern RC.

89. Development activities of the Pilot Point Project are already underway. The Pilot Point Project looks to be a strong EB-5 investment for foreign national investors.

90. To this end, the Pilot Point NCE Form I-956F was delivered to USCIS on December 6, 2023, and USCIS issued the Pilot Point NCE a receipt on December 8, 2023, with receipt number INF2360005792.

91. Over the past 588+ days, USCIS has taken no action on the Pilot Point NCE's Form I-956F.

92. While the Southeast Florida RC, the D.C. and Carolinas RC, the Rocky Mountain RC, the Southeast Georgia RC and the AZ and Southern RC, can still sponsor the Corey Landing NCE, the Rocky River Loan 2 NCE, the Rocky River Loan 3 NCE, the Tamarack NCE, the Twin Lakes Loan 5 NCE, the Spring Haven NCE, the Bay Creek NCE, the Grand Park NCE and the Pilot Point

NCE (together, the "NCEs") to solicit investment with its pending Forms I-956F, potential EB-5 investors are very savvy, and they are aware of the new pre-approval process under the Act. Thus, they are aware that these Forms I-956F are not yet approved, and they are withholding investment until USCIS finally adjudicates the pending Forms I-956F.

93. Because the NCEs have agreed to provide capital to their respective projects, they are responsible for acquiring the targeted amount of capital from foreign national investors. If they are unable to do so, then the associated projects will not reach their full potential without the infusion of other funding—meaning jobs will be lost and the projects may be delayed.

94. Because the Southeast Florida RC, the D.C. and Carolinas RC, the Rocky Mountain RC, the Southeast Georgia RC and the AZ and Southern RC all relied on USCIS to adjudicate the Forms I-956F in a reasonable amount of time—as Congress mandated under the Act—they are now in difficult positions while the Forms I-956F remain pending.

95. This threatens EB5AN's entire brand and reputation.

96. USCIS is required to prioritize "high unemployment projects" to ensure job creation occurs where it is most needed. The Corey Landing Project, the Spring Haven Project, and the Pilot Point Project are in areas designated as high unemployment TEAs.

97. USCIS is further required to prioritize "rural projects" to ensure job creation occurs where it is most needed. The Rocky River Project, the Tamarack Project, the Twin Lakes Project, the Bay Creek Project and the Grand Park Project are all in areas designated as rural TEAs.

98. This inexcusable delay is harming Plaintiffs and could result in their inability to continue in the marketplace. Additionally, in a time of economic uncertainty, this delay is also stalling millions of dollars of foreign direct investment, which will stimulate the U.S. economy and immediately create new jobs for American workers.

## FIRST CAUSE OF ACTION
### (APA – UNREASONABLE DELAY)

99. Plaintiffs re-allege and reassert the foregoing allegations contained in paragraphs one (1) through ninety-eight (98) as if fully set forth herein for this paragraph ninety-nine (90).

100. The APA requires USCIS to make a decision on Plaintiffs' applications "within a reasonable amount of time." 5 U.S.C. § 555(b).

101. USCIS has a non-discretionary duty to make a decision on the pending Forms I-956F. *See* The Act, § 105(b)(2).

102. USCIS has unreasonably delayed action on Plaintiffs' pending Forms I-956F.

103. This is an unreasonable delay under the factors laid out in *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984). Those factors comprise the following:

> (1) "the time an agency takes to make a decision should be governed by a 'rule of reason'"; (2) "[t]he content of a rule of reason can sometimes be supplied by a congressional indication of the speed at which the agency should act"; (3) "the reasonableness of a delay will differ based on the nature of the regulation; that is, an unreasonable delay on a matter affecting human health and welfare might be reasonable in the sphere of economic regulation"; (4) "the effect of expediting delayed actions on agency activity of a higher or competing priority . . . [and] the extent of the interests prejudiced by the delay"; and (5) "a finding of unreasonableness does not require a finding of impropriety by the agency."

*Id.*

104. First, USCIS has no rule of reason for the adjudication of Form I-956F.

105. Upon information and belief, USCIS does not process Forms I-956F on a "first-in, first-out" basis.

106. USCIS takes fees from petitioners in exchange for timely adjudicating Form I-956F; accordingly, USCIS took fees from Plaintiffs for the Corey Landing NCE Form I-956F, the Rocky River Loan 2 NCE Form I-956F, the Rocky River Loan 3 NCE Form I-956F, the Tamarack NCE's

initial Form I-956F and its Form I-956F Amendment Filing, the Twin Lakes Loan 5 NCE Form I-956F, the Spring Haven NCE Form I-956F, the Bay Creek NCE Form I-956F, the Grand Park NCE Form I-956F and the Pilot Point NCE Form I-956F.

107. USCIS issued an updated Form I-956F on April 1, 2024, and charged $47,695 to satisfy Congress's mandate. 87 Fed. Reg. 54233, 54234 (Sep. 2, 2022); 87 Fed. Reg. 79343 (Dec. 27, 2022).

108. Under Congress's mandate, this fee must lead to an average of 90-day adjudication times for a Form I-956F in a TEA. The average pending adjudication time for Plaintiffs' nine Forms I-956F is 139 days ((227 days + 95 days + 56 days + 81 days + 74 days + 87 days + 3 days + 43 days + 588 days) / nine Forms I-956F = 139 days). Therefore, USCIS has far exceeded the required 90-day average adjudication time for all of Plaintiffs' pending Form I-956Fs by over 49 days.

109. Second, Congress has provided clear content to any rule of reason by requiring USCIS to issue a form and formulate a cost that would allow USCIS to issue decisions in 90 days. The Act, § 106(b)(2).

110. This is consistent with Congress's aspiration to decide immigrant visa petitions in 180 days. 8 U.S.C. § 1571(b). Thus, Congress has indicated it should take 180 days to act on an immigrant benefit request, and USCIS purports to follow this legislative mandate.

111. Similarly, USCIS created the (initially discretionary) pre-approval process, formerly known as "I-924 exemplar," to streamline and speed up adjudications of the underlying EB-5 petitions. USCIS continued this streamlined approach under the RIA, now *requiring* that all projects first file the Form I-956F prior to an individual investor's submission of Form I-526E.

112. USCIS has published minimal data on processing times on Forms I-956F, allowing USCIS to delay adjudications for an unreasonable amount of time, without judicial intervention.

113. Third, USCIS's delay impacts human health and welfare, not merely economic interests. USCIS prevents EB5AN from marketing a pre-approved security to potential EB-5 Program investors, which puts at risk the sustainment and creation of jobs for American workers.

114. Fourth, compelling agency action here would have no effect on a USCIS activity of a higher or competing priority. The agency staffs an office whose sole mission is to process Forms I-526, I-526E, I-829, I-956, and I-956F. By statute, the agency is required to charge a fee that recaptures the actual expenses incurred in the adjudication process. The funds taken through application receipts are sufficient to accomplish the task of adjudicating within six months.

115. Fifth, USCIS will not approve Forms I-526E for investors in a project until it adjudicates the related Form I-956F. Thus, this delay is further delaying investors who have already invested in the Corey Landing NCE, the Rocky River Loan 2 NCE, the Rocky River Loan 3 NCE, the Tamarack NCE, the Twin Lakes Loan 5 NCE, the Spring Haven NCE, the Bay Creek NCE, the Grand Park NCE and the Pilot Point NCE. Until USCIS adjudicates the pending Forms I-956F, investors' applications sit in a deprioritized queue in the IPO.

116. The current delay of the Forms I-956F is not due to a lack of agency resources, as USCIS sets the fees it charges to pay for personnel to process petitions in a timely fashion.

117. It strains credulity to say compelling government action to make a decision would only put Plaintiffs' applications at the front of the line. *See TRAC*, 750 F.2d at 80 (noting courts should consider the prejudice to the agency's claimed interest). There is no line because USCIS does not adjudicate Forms I-956F on a first-in, first-out basis.

118. When seen in the context of the agency's overall approach to its statutory requirements, the circumstantial evidence of impropriety is palpable. Defendant has taken affirmative actions to

purposefully delay the adjudications of EB-5 Program petitions. However, this Court need not find such evidence to find the delay is unreasonable.

119. Each *TRAC* factor weighs in favor of ordering USCIS to issue a decision on Plaintiffs' applications; thus, USCIS's delay is arbitrary and capricious under 5 U.S.C. § 706.

120. Plaintiffs demand discovery from Defendant to develop the administrative record and establish its delay is unlawful, intentional, and targeted at a specific and identifiable group. This includes discovery, requests for production, interrogatories, and depositions of IPO Chief Alissa Emmel, her senior IPO staff, and supervisors and adjudicators who have been assigned to process these EB-5 Program petitions.

121. The delayed adjudication of the Corey Landing NCE Form I-956F, the Rocky River Loan 2 NCE Form I-956F, the Rocky River Loan 3 NCE Form I-956F, the Tamarack NCE's Form I-956F Amendment Filing, the Twin Lakes Loan 5 NCE Form I-956F, the Spring Haven NCE Form I-956F, the Bay Creek NCE Form I-956F, the Grand Park NCE Form I-956F and the Pilot Point NCE Form I-956Fis not substantially justified.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will provide relief as follows:

122. Declare all delays described above in adjudication of the Plaintiffs' Forms I-956F unreasonable;

123. Enter an order compelling USCIS to make decisions on Plaintiffs' Forms I-956F within 14 days, and if USCIS issues any request for additional evidence, order USCIS to make a final decision thereon within 30 days of its receipt of such Plaintiffs' response to such request for evidence; and

124. Enter and issue other relief that this Court deems just and proper.

Respectfully submitted this 18th day of July, 2025.

          LAW OFFICE OF JOSE D. SOSA, P.C.
          Attorneys for Plaintiffs
          1141 Via Jardin
          Palm Beach Gardens, FL  33418
          561/670-8237
          pepe@pepesosalaw.com

***/s/ Jose D. Sosa***
JOSE D. SOSA, ESQ.
Florida Bar No.:
Bar Number:  150878